U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

FEB 2 1 2017

TONY R. MOORE, CLERK
BY: _____
DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### ALEXANDRIA DIVISION

| | |
|---|---|
| DEIDRA A. FONTENOT | DOCKET NO.: 1:14-cv-3154 |
| VERSUS | |
| MOHAMMAD S. RAKIN AND | JUDGE DEE D. DRELL |
| WERNER ENTERPRISES, INC. of NEBRASKA | MAG. JUDGE PEREZ-MONTES |

## MEMORANDUM ORDER

Before the court are the plaintiff's motion *in limine* (Doc. 86) and partial motion for summary judgment (Doc. 87).  Defendants have filed oppositions to both motions which are currently ripe for decision.

### Background

The instant lawsuit arises out of an automobile accident that occurred on November 4, 2014, in Pineville, Louisiana.  According to plaintiff, Deidra A. Fontenot, she was proceeding southbound on U.S. 165 in her 2001 Nissan Maxima when Mohammad S. Rakin attempted to make a left hand turn from the northbound lane onto T. Hollingsworth Road in the 2013 Peterbuilt tractor trailer he operated on behalf of his employer, Werner Enterprises of Nebraska.  (Doc. 1-3).  Fontenot claims that Rakin failed to yield to oncoming traffic and traffic signals that caused her vehicle to "slam" into the trailer he was towing.  (Id. at p.1).  Fontenot sustained bodily injuries as a result of the accident and was taken to Rapides Regional Medical Center for treatment.

On September 26, 2014, Fontenot filed a Petition for Damages in the 9th Judicial District Court for the Parish of Rapides, Louisiana against Mohammad S. Rakin and Werner Enterprises,

Inc. of Nebraska.  Therein, she alleged she sustained bodily injuries, incurred medical expenses and suffered mental anguish and suffering for which she sought reasonable damages.

On October 30, 2014, the defendants removed the matter to this court citing 28 U.S.C. §1332, providing for diversity jurisdiction.[1]  (Doc. 1).  The defendants answered the complaint and requested a trial by jury (Docs. 5 and 18).

Approximately one year later, through the course of discovery, defendants learned that Fontenot underwent a urine drug screen on the evening of the accident, approximately six or seven hours after arriving at Rapides Regional Medical Center for treatment.  The drug screen was positive for the presence of THC, benzodiazepines, methadone and opiates.  Based on this finding, the defendants sought and were granted leave to supplement and amend their answer to assert a thirteenth defense pursuant to Louisiana Revised Statute 9:2798.4 that they were not liable for Fontenot's injuries or damages because she was "intoxicated at the time of the accident in question and greater than 25% comparatively negligent as a result of such intoxication."  (Doc. 53).[2]

The urine drug screen results and the aforementioned affirmative defense are at the heart of both the motion *in limine* and motion for partial summary judgment.

## Law and Analysis

### Plaintiff's Motion *in Limine*

Fontenot seeks to exclude "any and all evidence or inference to the use of illicit or non-prescription drugs, including the drug screen from Rapides Regional Medical Center."  (Doc. 86). The urine drug screen performed by Rapides Regional Medical Center showed a positive result for

---

[1] The basis of diversity jurisdiction exists.  The jurisdictional amount was never at issue and all parties are diverse: Plaintiff is a Louisiana citizen, Rakin is a New York citizen and Werner Enterprises, Inc. of Nebraska is a Nebraska corporation with its principal place of business is Omaha Nebraska that "has no parent company and no entity owns more than 10% of its stock", and it "is a publically traded company".  (Docs. 1 and 6).

[2] On that same day defendants were granted leave to supplement and amend, Fontenot was granted leave to file her supplemental and amending petition asserting a claim that her vehicle was a total loss and seeking property damage to and loss of use of her automobile. (Doc. 54).

several controlled substances, THC[3], benzodiazepines, methadone and opiates.  (Doc. 86-4).  The motion states that it seeks to exclude the laboratory report "based on reliability, relevance, foundation and hearsay concerns"; however, the memorandum focuses on exclusion of "illicit" and "non-prescription drugs" and not the entirety of the report.  This, coupled with the fact that the positive test results for Fontenot's prescription drugs, benzodiazepines and opiates, is material to her argument that La. R.S. 9:2798.4(D) applies to preclude the defendants' immunity defense, we will not address the exclusion of the report as a whole.  Rather, the ruling shall be limited to "any and all evidence or inference to the use of illicit or non-prescription drugs."

Defendants' expert toxicologist, Dr. William George, testified via deposition that the positive test results from the urine drug screen were indicative of drug use prior to the time of the test, not impairment or intoxication, as follows:  "I would, again, say it does not measure the level of intoxication, it is not intended to.  It's a measurement of a drug and/or its metabolite in the urine which is not indicated by itself to indicate intoxication."  (Doc. 87-3, p. 35)  (See also Id. at 16, 30-33, 39-40).  He also provided testimony regarding how long the drugs at issue could remain in one's system subsequent to use.  While THC could remain present in the urine of a frequent user up to a month, it would only remain in the urine of an occasional user one or two days.  (Id. at 26, 40).  Benzodiazepines could remain present in urine three to five days, whereas amphetamines and opiates could remain for two to three days.   (Id. at 25, 27).

Dr. George testified that he considered all evidence, including the urine drug screen results, to determine the amount of the drugs in Fontenot's system at the time of the accident and whether that rendered her intoxicated.  (Doc. 13-15).  Dr. George established a calculation and determined the amount of Valium that remained in her system.  (Id.).  He then considered the supplemental

---

[3] THC is an abbreviation for *delta-9-t*etrahydrocannabinol, the mind-altering chemical found in marijuana.  See. https://www.drugabuse.gov/drugs-abuse/marijuana.

effect of the other drugs (for which she tested positive) on the Valium in her system.  Though not conceded by Dr. George, it is clear that there was no evidence before him indicating the levels of THC or methadone in her system nor could any be calculated as there was no evidence of the date and time she used marijuana and/or methadone nor the dosage(s).  Accordingly, the crux of his opinion was based upon her admitted use of prescription drugs, Valium, Hydrocodone and Phenergan.  (Id. at 14-16, 47-58, 72-73, 81-84, 94-96).

Although the laboratory report establishes use of marijuana and methadone, that is all it establishes.  Whether that evidence of Fontenot's non-prescription drug is relevant must be determined by asking whether the report has a tendency to make a fact more or less probable than it would be without the evidence and whether the fact is of consequence in determining this action. Fed.R.Evid. 401.  The report does tend to make the issue of illicit, non-prescription drug use more probable than it would be without the evidence because there is no other evidence in the record regarding Fontenot's use of illicit, non-prescription drugs.  The determination is relevant to the issue of whether the immunity defense set forth in La.R.S. La.R.S.9:2798.4 should be allowed to preclude liability on behalf of the defendants as it establishes use of the two illicit, non-prescription drugs.  Nevertheless, the court does not find the evidence admissible as it has little, if any, probative value in reaching a determination on the final issue.

Whether Fontenot was intoxicated as a result of using the two illicit, non-prescription drugs cannot be established from the report alone.  As observed by Dr. George, the urine drug screen does not quantify the amount of drugs in one's system and cannot be used to determine impairment or intoxication.  Further, what little probative value there may be, if any, is substantially outweighed by the potential for "unfair prejudice, confusing the issues, and/or misleading the jury." Fed.R.Evid. 403.  Therefore, any reference to the portion of the laboratory report regarding

4

the use of illicit, non-prescription drugs shall be excluded. Furthermore, as there is no other evidence in the record regarding the use of illicit or non-prescription drugs prior to the accident, no reference or inference of such may be made during trial of this matter.

Plaintiff's Motion for Partial Summary Judgment

This motion seeks to eliminate the defendants' claimed statutory immunity defense. A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anders on v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir.2011)(internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

Defendants' immunity defense is set forth in Revised Statute 9:2798.4(A)(2), which provides, in relevant part, that no person shall be liable for damages for injury, death or loss of the operator of a motor vehicle who was operating a motor vehicle while "under the influence of any controlled dangerous substance described in R.S. 14:98(A)(1)(c) or R.S. 40:964)." Defendants argue that Fontenot's positive urine drug screen proves she was "under the influence" of a controlled dangerous substance at the time of the accident.[4] Thus, the argument goes, they are immune from liability.

---

[4] To prevail on this defense, defendants further acknowledge they must establish that Fontenot was more than 25% negligent in causing the accident as a result of being under the influence of that controlled dangerous substance as set forth in part B of R.S. 9:2798.4.

In response, Fontenot notes that R.S. 9:2798.4(D) of the statute precludes the application of this immunity provision when:

> ...the operator tests positive for any controlled dangerous substance covered by the provisions of R.S. 14:98(A)(1)(c) or 40:964 and the operator is taking that substance pursuant to a valid prescription for the identified substance or a health care provider verifies that he has prescribed or furnished the operator with that particular substance.

Fontenot argues Dr. George's opinion that she was intoxicated at the time of the accident was based solely upon his valuation of her use of Valium, Hydrocodone and Phenergan. Because these were all prescription drugs (and Phenergan is not a controlled substance as defined by the statute), the exclusion applies to preclude the use of the immunity defense as to these three drugs.

Defendants' opposition claims two main contentions: (1) the urine drug screen creates a genuine dispute of material fact as to whether Fontenot was under the influence of a non-prescribed controlled dangerous substance at the time of the accident, and (2) Dr. George testified his intoxication opinion was limited to the use of Valium, Hydrocodone and Phenergan if the court excluded the urine drug screen as evidence. As explained *supra*, any reference to the use of illicit, non-prescription drugs is inadmissible at the trial; the portion of the laboratory report pertaining to illicit, non-prescription drugs does not and cannot establish impairment or intoxication at the time of the accident. As such, the only remaining evidence within the report addresses the positive test results for her prescription drugs, Valium and Hydrocodone. Given the statutory exception, this remaining evidence does not create a genuine dispute of material fact as to whether Fontenot was under the influence of a non-prescription, controlled dangerous at the time of the accident. Rather, those results serve to support a finding under La.R.S. 9:2798.4(D) that the defendants are precluded from pursuing their immunity defense. Accordingly,

**IT IS ORDERED** that the plaintiff's motion *in limine* to exclude evidence of non-prescription drug use including the results of the urine drug screen conducted by Rapides Regional Medical Center on the evening of the accident is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for partial summary judgment (Doc. 87) is **GRANTED** and defendants are precluded from proceeding on the affirmative defense provided by La. R. S. 9:2798.4.

**SIGNED** at Alexandria, Louisiana on this 21st day of February, 2017.

 

 

**DEE D. DRELL, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**